UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

|  |  |
|---|---|
| ALFREDO PEÑA-REYES,<br>and ADOLFO PEÑA-REYES,<br>individually, and on behalf of others similarly<br>Situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>U.S.A. LAWNS, INC. /dba U.S. LAWNS OF<br>NORTH TAMPA, INC. and<br>REINALDO J. ROSE, individually,<br><br>     Defendants. | Civil Action<br>No. _____<br><br><br><br>COLLECTIVE ACTION |

## COMPLAINT FOR DAMAGES, COSTS OF LITIGATION AND ATTORNEY'S FEES

## INTRODUCTION

1. This is an action by two Mexican non-immigrant workers, Alfredo Peña-Reyes and Adolfo Peña-Reyes, who were recruited by the Defendants, U.S.A Lawns, Inc. also known as U.S. Lawns of North Tampa, Inc., and Defendant Reinaldo J. Rose to work as groundskeepers and landscapers for Defendants' Hillsborough County, Florida operations.

2. Plaintiff Alfredo Peña-Reyes was paid his wages by U.S. Lawns of North Tampa, Inc., and at all times was supervised, managed and directed in his daily activities by employees of Defendant U.S. Lawns Inc.

3. Plaintiff Adolfo Peña-Reyes was recruited and hired by Defendants U.S.A Lawns, Inc. and Reinaldo J. Rose to perform work during 2012 as a groundskeeper.

4. Plaintiff Alfredo Peña-Reyes was paid far less than the wage rates due him under federal and state law as a result of uncompensated pre-employment expenses, excessive housing charges, and uncompensated overtime. Once he arrived in the U.S. in April 2011, Plaintiff Alfredo Peña-Reyes was notified that in order to work for U.S. Lawns Inc. he was required to pay a $3,000 job placement fee. Upon payment of the job placement fee, U.S. Lawns, Inc. required Plaintiff Alfredo Peña-Reyes to record part of his working time during the week under the name of "Gabino Salcedo." Furthermore, monthly fees were deducted from Plaintiff Alfredo Peña-Reyes' paychecks for housing, even though the Plaintiff had been promised at the time of his recruitment that these facilities would be provided without charge.  As a result of these concerted activities, Plaintiff Alfredo Peña-Reyes remained in constant fear of losing employment with the Defendants and believed he had no choice but to obey the directives and orders given to him in order to preserve his job and to avoid repatriation to Mexico.

5. Plaintiff Adolfo Peña-Reyes also did not receive the wages due him under federal and state law as a result of pre-employment expenses incurred principally for the Defendants' benefit. Once he arrived to the U.S. in April 2012, Plaintiff Adolfo Peña-Reyes was informed that in order to work for U.S. Lawns Inc. he was required to pay a $3,300 job placement fee. Following payment of the job placement fee, Plaintiff Adolfo Peña-Reyes waited for instructions to begin work but was informed that employees were offered work based on their seniority with the company. Because he was a new employee, Plaintiff Adolfo Peña-Reyes was not offered any

work. After several weeks of waiting in vain for a job assignment with U.S.A. Lawns, Plaintiff Adolfo Peña-Reyes had no choice but to leave Florida.

6. Plaintiffs assert claims under the Fair Labor Standards Act (29 U.S.C. §216(b)); Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1962(c) and 1962(d)); and the minimum wage provisions of the Florida Constitution, Article 10, Section 24. Plaintiffs seek to recover their unpaid wages, actual, liquidated, consequential and compensatory damages and pre- and post-judgment interest.  The Plaintiffs also seek a reasonable attorney's fee pursuant to 29 U.S.C. §216(b), §448.08, Fla. Stat. and Article 10, Section 24 of the Florida Constitution.

## JURISDICTION

7. Jurisdiction is conferred on this Court by 29 U.S.C. §216(b), this action arising under the Fair Labor Standards Act, and by 18 U.S.C. §1595(a), and this action arising under the Racketeering Influenced and Corrupt Organizations Act (RICO).  This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367 because these state law claims are so related to the FLSA and RICO claims that they form part of the same case and controversy as the federal claims.

## VENUE

8. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c). The Defendants reside in this district and the cause of action arose here.

## PARTIES

9. The Plaintiffs are citizens of Mexico who entered the United States with non-immigrant visas for employment at the Defendants' Hillsborough County operations.  The Plaintiffs currently reside in the state of Hidalgo in Mexico.

10. Defendant U.S.A. Lawns Inc., also known as U.S. Lawns of N. Tampa ("U.S.A. Lawns"), is a Florida corporation. Defendant U.S.A. Lawns operates a commercial landscaping corporation at 3223 County Line Road East, Lutz, Hillsborough County. At all times relevant to this action, Defendant U.S.A. Lawns employed the Plaintiffs as landscapers and/or groundskeepers within the meaning of the FLSA, 29 U.S.C. §203(e), and the minimum wage provisions of the Florida Constitution, Article 10, Section 24. U.S.A. Lawns Inc.'s 2011 request to the United States Department of Labor sought to fill 165 positions, and its 2012 request sought to fill 165 positions, with non-agricultural guestworkers from Mexico. These requests would have obligated U.S.A. Lawns Inc. to pay over $52,800 in minimum wage weekly salaries over a eight month period. As a result, U.S.A. Lawns is an enterprise whose annual gross volume of sales was $500,000 or more, and thereby engaged in commerce, within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203(s)(1)(A).

11. Defendant Reinaldo J. Rose ("Rose") is the president and one of four shareholders in U.S.A. Lawns. At all times relevant to this action, Defendant Rose managed the day-to-day affairs and acted on behalf of U.S.A. Lawns. At all times relevant to this action, Defendant Rose employed the Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(d), and the minimum wage provisions of the Florida Constitution, Article 10, Section 24.

## FACTUAL ALLEGATIONS

12. In 2011 and 2012, U.S.A. Lawns recruited individuals in Mexico to fill positions as landscapers and/or groundskeepers. Pedro Jimenez, acting as U.S. Lawns' agent, recruited workers in the state of Hidalgo, to enter the United States as guestworkers to fill U.S.A. Lawns' landscaping and grounds keeping positions.

13. In 2011 and again in 2012, U.S.A. Lawns under the name of "U.S. Lawns of N. Tampa," applied to the United States Department of Labor ("DOL") for temporary labor certification to import workers from Mexico for employment on its operations in Hillsborough County and central Florida. U.S.A. Lawns sought the admission of 165 workers for employment from March 1, 2011 through November 30, 2011 and 165 workers for employment from March 1, 2012 through November 30, 2012. The Immigration and Nationality Act permits a non-agricultural employer who anticipates a labor shortage to import alien workers to perform unskilled labor of a seasonal or temporary basis. 8 U.S.C. § 1101(a)(15)(H)(ii)(B). Aliens admitted in this fashion are commonly referred to as "H-2B workers."

14. DOL granted the 2011 and 2012 temporary labor certification applications by U.S.A. Lawns as described in Paragraph 13, admitting 155 workers for employment from March 1, 2011 through November 30, 2011 and 153 workers for employment from March 1, 2012 through November 30, 2012. Upon receiving temporary labor certifications in 2011 and 2012, U.S.A. Lawns recruited and hired the Plaintiffs and other individuals in Mexico to work for it pursuant to H-2B visas.

15. During its recruitment of the Plaintiffs, U.S.A. Lawns, through its agent in Mexico, Pedro Jimenez, provided the Plaintiffs with false and misleading information about the terms and conditions of their employment and induced them to incur significant debts. Among other things, U.S.A. Lawns' agent promised the Plaintiffs that if they paid a job placement fee to U.S. Lawns ($3,000.00 in 2011 and $3,300.00 in 2012), they would be guaranteed employment with the company for a period of eight (8) months at a rate of at least $8.00 per hour and would be provided housing at no charge. The Defendants also misled the U.S. government by providing

inaccurate information on its 2011 and 2012 H-2B temporary labor certification applications and Department of Labor certification forms submitted for the Plaintiffs, including the amount of work and pay.

16. Based on the representations by U.S.A. Lawns' agent, the Plaintiffs incurred pre-employment expenses of approximately $3,500.00 each related to the proffered employment at U.S.A. Lawns.  These expenses included a $70.00 bus fare between the Plaintiffs' home towns in Hidalgo and Monterrey, Mexico, a $240.00 bus fare between Monterrey, Mexico, and Florida, and $45.00 for hotel accommodations in Monterrey while the Plaintiffs waited to receive their H-2B visas. In addition, the Plaintiffs paid a visa processing fee of approximately $150.00 to the United States Consulate in Monterrey, a $6.00 border crossing fee for issuance of Form I-94 as a prerequisite for entering the United States. Plaintiff Alfredo Peña-Reyes also paid a $3,000.00 placement fee for U.S.A. Lawns in order to obtain a job in 2011, while Plaintiff Adolfo Peña-Reyes paid a $3,300.00 placement fee for U.S.A. Lawns in order to obtain a job in 2012.

17. The fees the Plaintiffs paid as described in Paragraph 16 were primarily for the benefit of U.S.A. Lawns within the meaning of the Fair Labor Standards Act and its implementing regulations, 29 C.F.R. §531.3(d).  No portion of the pre-employment expenses moneys described in Paragraph 16 was reimbursed to the Plaintiffs during their first week of employment with U.S.A. Lawns, nor at any time thereafter.

**Plaintiff Alfredo Peña-Reyes**

18. Plaintiff Alfredo Peña-Reyes was employed by U.S.A. Lawns from May through September 2011, working as a groundskeeper and/or landscaper.

19. Shortly following Plaintiff Alfredo Peña-Reyes' arrival in the United States in April 2011, Defendant Reinaldo "Ray" Rose, President of U.S.A. Lawns copied Plaintiff Alfredo Peña-Reyes' visa, original social security card and passport. Rose also demanded payment of the $3,000.00 placement fee. Plaintiff Alfredo Peña-Reyes did not have the $3,000.00 fee in hand, and asked Rose for a few days to obtain the money. Rose stated that without payment of this placement fee, U.S.A. Lawns could not offer any work to Plaintiff Alfredo Peña-Reyes.

20. About three to four days later, in early April 2011, Plaintiff Alfredo Peña-Reyes paid the $3,000.00 placement fee to Rose, who then informed him that no work was currently available, but would contact him as openings occurred.

21. Sometime in late April or early May 2011, Rose contacted Plaintiff Alfredo Peña-Reyes and indicated that he could begin working immediately. Plaintiff Alfredo Peña-Reyes was also informed by Rose that he would have to pay U.S.A. Lawns $200.00 per month for accommodations at the U.S.A. Lawns' headquarters site and that this amount would be deducted once each month from his earnings.

22. The accommodations offered to Plaintiff Alfredo Peña-Reyes by U.S.A. Lawns were in a house at the same location as the U.S.A. Lawns' machinery shop and headquarters. The Plaintiff lived at this property with seven or eight other co-workers from early May through September, 2011.

23. For his work at U.S.A. Lawns, Plaintiff Alfredo Peña-Reyes was paid wages at a rate of $8.00 per hour.  Although he frequently was employed for more than 40 hours in a particular workweek, the Plaintiff was not paid any overtime wages.   U.S.A. Lawns supervisor "Agustin" informed the Plaintiff Alfredo Peña-Reyes that in order to be paid any wages at all for his

additional work hours in excess of 40 hours in a workweek, Peña-Reyes would have to separately record these overtime hours under a different employee's name. Agustin assigned the Plaintiff the name "Gabino Salcedo" for these purposes. As he neared the 40 hour mark during a workweek, Plaintiff Alfredo Peña-Reyes was ordered by Agustin to cease recording his work time under his real name, and to begin recording it under the name of Gabino Salcedo.

24. Plaintiff Alfredo Peña-Reyes was paid on a biweekly basis. On pay day, Plaintiff Alfredo Peña-Reyes would receive two payments, one issued under his name, and the other payment issued under the name of "Gabino Salcedo." As a result of these deceptive practices, U.S. Lawns' payroll records regarding Plaintiff Alfredo Peña-Reyes were inaccurate, omitting any work time he worked over 40 hours in a workweek.

25. The accommodations in which Plaintiff Alfredo Peña-Reyes resided as described in Paragraph 22, were strictly controlled by U.S.A. Lawns.   Before being permitted to leave the housing, Plaintiff Alfredo Peña-Reyes was required to obtain permission from U.S.A. Lawns' property guard "Mr. Reyes." Without Reyes' approval, neither Plaintiff Alfredo Peña-Reyes nor the other occupants could leave the property.

26. Three of Plaintiff Alfredo Peña-Reyes' roommates had been working with the company since the beginning of April 2011. These workers told Plaintiff Alfredo Peña-Reyes that former employees of U.S.A. Lawns had complained to Rose about deductions on their paychecks for the $3,000.00 job placement fee. Rose told these former employees that in order to continue working for U.S.A. Lawns, they needed to finish paying the job placement fee through deductions from their biweekly checks. Upon their refusal to pay the placement fees, these former workers were fired.

27. Plaintiff Alfredo Peña-Reyes suspected that there were fraudulent wage payment practices at U.S.A. Lawns. He was afraid that if he voiced his concerns or any complaints regarding the company's practices, he would lose his job and would have to return to Mexico. He also feared retribution against him in the future.

28. U.S.A. Lawns did not deduct the $200.00 monthly rent from Plaintiff Alfredo Peña-Reyes's wages during his first three months of employment. However, when Plaintiff Alfredo Peña-Reyes left his job two months before the expiration of his H-2B visa, U.S.A. Lawns deducted $600.00 from his last paycheck for the previous three months rent. As a result of this $600.00 deduction, plaintiff Alfredo Peña-Reyes received wages well below the federal and state minimum wages for his final week of work.

**Plaintiff Adolfo Peña-Reyes**

29. Plaintiff Adolfo Peña-Reyes was recruited in Mexico by U.S.A. Lawns' agent Pedro Jimenez to work for U.S.A. Lawns from April through November 2012 as a groundskeeper and/or landscaper.

30. At the time of his recruitment, Plaintiff Adolfo Peña-Reyes was promised by Jimenez that any expenses associated with his visa and travel to Florida would be reimbursed by U.S.A. Lawns upon his arrival to the United States to begin work.

31. After incurring pre-employment expenses as described in paragraph 16, Plaintiff Adolfo Peña-Reyes arrived in Florida in April 2012. Once at U.S.A. Lawns' jobsite, Adolfo Peña-Reyes' passport and social security card were copied by "Agustin."

32. Plaintiff Adolfo Peña-Reyes was able to secure temporary housing at the home of a relative's friend. Once there, Plaintiff Adolfo Peña-Reyes continued to communicate with

another U.S.A. Lawns' supervisor "Pedro" regarding employment with the company. Pedro told Plaintiff Adolfo Peña-Reyes that in order to begin working for U.S.A. Lawns, he first needed to pay a job placement fee of $3,300.00.

33. After he collected the job placement fee amount, Pedro told Plaintiff ADOLFO Peña-Reyes that once work became available, he would be contacted. Pedro added that work assignments were on seniority and that former employees would be the first ones offered work.

34. After weeks of not hearing from Pedro despite his attempts to call him, Plaintiff Adolfo Peña-Reyes tried without success to contact Ray Rose directly to be reimbursed for his job placement fee. With no prospect of job assignments from U.S.A. Lawns, Plaintiff Adolfo Peña-Reyes left the area to seek employment elsewhere.


## COLLECTIVE ACTION ALLEGATIONS

35. According to Defendant U.S. Lawns of North Tampa's 2011 temporary labor certification application, at least one hundred and sixty five employees similarly situated to the Plaintiffs worked for the Defendants performing services as groundskeepers and/or landscapers in the Hillsborough County and central Florida area.

36. The Plaintiffs and other similarly situated employees each paid the Defendants a job placement/hiring fee ($3,000.00 in 2011, and $3,300.00  in 2012) in order to obtain job assignments from U.S.A. Lawns.

37. The Plaintiffs and other similarly situated employees also incurred other pre-employment expenses for visas, transportation from their homes to Monterrey and from Monterrey to the Defendants' jobsite, and for issuance of Form I-94.

38. The expenses incurred by Plaintiffs and other similarly situated employees in preparation for working for the Defendants, as described in Paragraphs 36 and 37 were primarily for the benefit of the Defendants. Plaintiffs and other similarly situated employees were not reimbursed for these expenses during the first week of their employment with the Defendants, or at any time thereafter.

39. The Defendants also failed to pay the Plaintiffs and other similarly situated employees one-and-a-half times their regular rate for all hours worked in excess of 40 in a workweek.

## CLAIMS FOR RELIEF

### COUNT I

*Fair Labor Standards Act (FLSA)- Minimum Wage Class*

40. Plaintiffs Alfredo Peña-Reyes and Adolfo Peña-Reyes bring this claim for violations of the minimum wage provisions of the Fair Labor Standards Act, as a putative collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and an **"FLSA Minimum Wage Class,"** consisting of H-2B employees of Defendants who were employed by Defendants at any time from April 2011 through November 2012.

-11-

41. Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by not paying the Plaintiffs and other similarly situated employees the federal statutory minimum wage for each workweek that the Plaintiffs and other similarly situated employees worked for Defendants between April 2011 and November 2012.

42. The violations of the FLSA as set out in Paragraph 41 resulted from the Defendants' failure to reimburse the Plaintiffs and other similarly situated employees during their first week of employment for pre-employment expenses primarily benefitting the Defendants, including these workers' visa-related expenses, fees for issuance of Form I-94, the full costs of the Plaintiffs' travel from their homes to the area of the Defendants' jobsite, lodging expenses in Monterrey, and the job placement fees paid to U.S.A. Lawns.

43. As a consequence of the Defendants' FLSA violations, Plaintiffs and other similarly situated employees are entitled to recover their unpaid minimum wages, plus an additional amount in liquidated damages, pursuant to 29 U.S.C. § 216(b).

## COUNT II

### *Fair Labor Standards Act- FLSA Overtime Class*

44. Plaintiff Alfredo Peña-Reyes brings the claims set forth in Count II, alleging violations of the FLSA, as a putative collective action on behalf of himself and an **"FLSA Overtime Class,"** consisting of all former employees of Defendants who were employed by Defendants from April 2011 through November 2011, as hourly employees and who, during that period, worked in excess of forty hours in any work week and were not paid at a rate of one-and-a-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.

45. The Defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 207(a) by not paying Plaintiff Alfredo Peña-Reyes and other similarly situated employees one-and-a-half times their regular rate for all hours worked in excess of 40 in a workweek between April 1, 2011 and November 30, 2011.

46. The violations of the overtime provisions of the FLSA as set out in Paragraph 45 resulted from Defendants' deceptive practice of splitting and recording the hours worked by Plaintiff Alfredo Peña-Reyes and other similarly situated employees into two employees' names. The Defendants' practice of requiring Plaintiff Alfredo Peña-Reyes and other similarly situated employees to record their work time under two separate employee identities was designed and intended to conceal the Defendants' overtime obligation and to prevent Plaintiff Alfredo Peña-Reyes and other similarly situated employees from receiving the overtime wages due them under the FLSA.

47. As a consequence of the Defendants' FLSA violations, Plaintiff Alfredo Peña-Reyes and other similarly situated employees are entitled to recover their unpaid overtime wages, plus an additional amount in liquidated damages, pursuant to 29 U.S.C. § 216(b).

## COUNT III

### *Fair Labor Standards Act- Minimum Wage (Individual Claim)*

48. Plaintiff Alfredo Peña-Reyes brings this claim for violations of the minimum wage provisions of the Fair Labor Standards Act by U.S.A. Lawns.

49. U.S.A. Lawns violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay Plaintiff Alfredo Peña-Reyes at least $7.25 between January 1, 2011

and December 31, 2011 for every compensable hour of labor performed during each workweek he was employed at U.S.A. Lawns.

50. The violations of the minimum wage provisions of the FLSA as set out in Paragraph 49 resulted in part from the unlawful withholding from the wages of Plaintiff Alfredo Peña-Reyes of charges for housing facilities which reduced the Plaintiff's earnings below the minimum wage, as described in Paragraph 28.

51. As a consequence of U.S.A. Lawns' violations of the Fair Labor Standards Act set out in this count, Plaintiff Alfredo Peña-Reyes is entitled to recover the minimum wages due plus an additional equal amount in liquidated damages pursuant to 29 U.S.C. §216(b).

## COUNT IV

### *MINIMUM WAGE PROVISIONS OF FLORIDA CONSTITUTION*

### Florida Constitution, Article X, Section 24

52. This count sets forth a claim for damages by Plaintiffs Alfredo Peña-Reyes and Adolfo Peña-Reyes for U.S.A. Lawns' violations of the minimum wage provisions of the Florida Constitution, as implemented through the Florida Minimum Wage Act, Fla. Stat. §448.110.

53. U.S.A. Lawns failed to pay the Plaintiffs in compliance with the requirements of the Florida Minimum Wage Act and the Florida Constitution. The applicable minimum wage was $7.31 for work performed between January 1, 2011 and December 31, 2011 and $7.67 for work performed between January 1, 2012 and December 31, 2012.

54. As set forth in Paragraphs 19 and 30, the Plaintiffs were required to pay job placement fees to guarantee their employment with U.S.A. Lawns. In addition, the Defendants failed to reimburse the Plaintiffs during their initial week of employment for pre-employment

expenses associated with their visa and travel expenses incurred primarily for the Defendants' benefit, as set out in Paragraph 16, resulting in the Plaintiffs receiving less than the mandated state minimum wage for their labor.

55. The Plaintiffs have performed all conditions precedent to filing this action under the Florida Minimum Wage Act in accordance with Fla. Stat. § 448.110(6)(a), but the Defendants have failed to pay the total amount of unpaid wages or otherwise resolve the claims to the satisfaction of the Plaintiffs.

56. As a result of the Defendants' violations of the minimum wage provisions of the Florida Constitution as described above, the Plaintiffs are entitled to recover the amount of their respective unpaid minimum wages and an equal amount as liquidated damages, pursuant to Art. 10, Section 24 (e) of the Florida Constitution.

## COUNT V

### *Racketeer Influenced and Corrupt Organizations Act*
### 18 U.S.C. § 1962(c) and 18 U.S.C. § 1692(d)

57. Plaintiffs Alfredo Peña-Reyes and Adolfo Peña-Reyes bring this claim against Defendants USA Lawns, Inc. and Ray Rose.

58. The Plaintiffs are "persons" with standing to sue under 18 U.S.C. § 1964(c).

59. Defendants U.S.A. Lawns and Ray Rose constitute an association-in-fact, and therefore an enterprise (the "RICO Enterprise") within the meaning of 18 U.S.C. § 1961(4).

**The RICO Enterprise**

60. The RICO enterprise is a business relationship between USA Lawns Inc. and Defendant Ray Rose with the common purpose of fraudulently obtain H-2B visas and later sell

-15-

them for a profit by recruiting, obtaining, processing, and providing low-wage Mexican H-2B guest workers from employment in the United States.

61. The RICO enterprise is engaged in interstate commerce in that its activities and transactions relating to recruiting, obtaining, processing, and providing a low-cost Mexican workforce and associated visa fraud involved the international and interstate movement of workers affecting interstate commerce and frequently required travel and communication across state and international lines.

62. The Defendants conducted or participated in, and/or conspired to conduct or participate in, the affairs of the RICO enterprise through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. §§ 1962(c) and 1962(d), related by their common purpose to fraudulently obtain H-2B visas and later sell them for a profit by recruiting, obtaining, processing, and providing low-wage Mexican H-2B guest workers for employment in the United States.

63. Specifically, Defendants conducted or participated in, and/or conspired to conduct or participate in, the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

   a. Unlawful conduct with respect to documents in furtherance of trafficking in violation of 18 U.S.C. § 1592(a);

   b. Immigration document fraud in violation of 18 U.S.C. § 1546;

   c. Mail and wire fraud in sending fraudulent visa applications to the U.S. Department of Labor and U.S. Citizenship and Immigration Services in violation of 18 U.S.C. §§ 1341 and 1343 respectively; and

-16-

d. Interstate and foreign travel to further their unlawful scheme in violation of 18 U.S.C. § 1952.

## Predicate Acts

*Unlawful Conduct with Respect to Documents in Furtherance of Trafficking:*

*18 U.S.C. § 1592(a)*

64. Defendants willfully, knowingly, and intentionally committed and/or conspired to commit multiple predicate acts of unlawful conduct with respect to documents by: 1) fraudulently obtaining H-2B visas to later sell them to H-2B workers, and 2) obtaining and retaining social security numbers for H-2B workers for the purpose of underpaying their workforce in violation of 18 U.S.C. § 1592(a).

65. These predicate acts of unlawful conduct with respect to documents furthered the goal of the RICO enterprise of fraudulently obtaining H-2B visas and later selling them for a profit by recruiting, obtaining, processing, and providing low-wage Mexican H-2B guest workers for employment in the United States.

*Immigration Document Fraud: 18 U.S.C. § 1546*

66. Defendants in the RICO enterprise fraudulently obtained H-2B visas by knowingly making false claims and statements about the nature and location of the work and the wages to be paid, in violation of 18 U.S.C. § 1546. The false claims and statements were made willfully, knowingly, and intentionally.

67. These predicate acts of immigration document fraud furthered the goal of the RICO

-17-

enterprise of fraudulently obtaining H-2B visas and later selling them for a profit by recruiting, obtaining, processing, and providing low-wage Mexican H-2B guest workers for employment in the United States.

*Mail Fraud: 18 U.S.C. § 1341*

68. As set forth in the preceding paragraphs, Defendants fraudulently obtained H-2B visas in 2011 and 2012 and assigned former employees' social security numbers to their current employees as part of a scheme to avoid paying workers overtime wages. The Defendants also made, and/or conspired to make, false promises regarding immigration benefits in a scheme calculated to defraud Plaintiffs and to coerce Plaintiffs into remaining in the employ of U.S.A. Lawns' Defendants.

69. The Defendants used the mails on numerous occasions during 2011 and 2012 to further these fraudulent schemes.

70. The willful, knowing, and intentional acts set forth in this count constitute mail fraud in violation of 18 U.S.C. § 1341.

71. These predicate acts of mail fraud furthered the goal of the RICO enterprise of fraudulently obtaining H-2B visas and later selling them for a profit by recruiting, obtaining, processing, and providing low-wage Mexican H-2B guest workers for employment in the United States.

*Wire Fraud: 18 U.S.C. § 1343*

72. As set forth in the preceding paragraphs, Defendants fraudulently obtained H-2B visas in 2011 and 2012. Defendants also made, and/or conspired to make, false promises

regarding immigration benefits in a scheme calculated to defraud the Plaintiffs and to coerce the Plaintiffs into remaining in the employ of U.S.A. Lawns' Defendants.

73. The Defendants used wire communications via telephone, fax, and/or email on numerous occasions to further these schemes.

74. These willful, knowing, and intentional acts constitute wire fraud in violation of 18 U.S.C. § 1343.

75. These predicate acts of wire fraud furthered the goal of the RICO enterprise of fraudulently obtaining H-2B visas and later selling them for a profit by recruiting, obtaining, processing, and providing low-wage Mexican H-2B guest workers for employment in the United States.

*Unlawful Acts in Support of Racketeering Enterprises through Interstate and Foreign Travel:*

*18 U.S.C. § 1952*

76. As set forth in the preceding paragraphs, the Defendants regularly engaged in, and/or conspired to engage in, interstate and foreign travel to carry on their unlawful activities, including travel to Mexico to recruit H-2B workers.

77. Defendants in the RICO enterprise frequently engaged in interstate and/or foreign travel to effectuate the fraudulent acts discussed above.

78. These willful, knowing, and intentional acts violated 18 U.S.C. § 1952.

*Pattern of Related Racketeering Acts*

79. The predicate acts of racketeering activity described above constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

80. The predicate acts were related to the enterprise. In carrying out the common purpose of the RICO enterprise to fraudulently obtain H-2B visas and later selling them for a profit by recruiting, obtaining, processing, and providing low-wage Mexican H-2B guest workers for employment in the United States. Defendants in the RICO Enterprise utilized fraudulent recruitment methods and tactics designed to compel involuntary labor.

81. The Defendants engaged in the racketeering activity described in this Complaint repeatedly, beginning as early as April 2011 and continuing through at least November 2012 with respect to approximately 320 Mexican workers.

82. Defendants in the RICO enterprise relied on the racketeering acts described in this Complaint to conduct their regular business activities. The above-named Defendants' racketeering acts have similar purposes: to fraudulently obtain visas and later sell them for a profit to Plaintiffs and other similarly situated individuals, and to recruit, obtain, provide, and maintain a low-wage Mexican H-2B guestworker labor force in the United States for U.S.A. Lawns.

83. The Defendants' acts have yielded similar results and caused similar injuries to the Plaintiffs, including payment of high fees, assumption of interest-bearing debt, lost work opportunities, and lost or unpaid wages.

84. As set forth in the preceding paragraphs, the racketeering acts have similar participants: Defendants U.S.A. Lawns, Ray Rose, and their agent, Pedro Jimenez.

85. As set forth in the preceding paragraphs, the Defendants directed their racketeering activities at similar victims: Mexican workers seeking employment abroad.

86. The Defendants' acts have similar methods of commission, such as common recruitment tactics, relatively consistent practices with respect to collecting payments from the Plaintiffs, use of similar employment practices and policies with respect to the Plaintiffs, and similar methods of coercion and control of the Plaintiffs and other similarly situated individuals.

*Injury*

87. As a direct and proximate result of Defendants U.S.A. Lawns, Rose, and agent Pedro Jimenez's willful, knowing, and intentional acts discussed in this section, the Plaintiffs have suffered injuries including, but not limited to, payment of exorbitant job placement fees, and fees for visas, and other immigration and recruitment-related services; lost and unpaid wages, lost employment opportunities; and other pecuniary and/or losses to real or personal property.

88. The Plaintiffs are entitled to an award of damages in an amount to be determined at trial, including treble damages and attorneys' fees and costs associated with this action and any other relief deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs ask the Court to enter judgment in their favor against the Defendants and issue an order:

a. Certifying this case as a collective action under 29 U.S.C. § 216(b) and ordering that notice of the lawsuit be issued in an effective manner to the FLSA Minimum Wage Class and FLSA Overtime Classes so that similarly situated employees may promptly file consent forms and join this action, 29 U.S.C. § 216(b);

b. Granting judgment in favor of the Plaintiffs and against Defendants U.S.A. Lawns Inc. and Reynaldo J. Rose, jointly and severally, under the Fair Labor Standards Act,

-21-

in the amount of the unpaid minimum wages, and overtime wages due and owing to the Plaintiffs, as well as an equal award of liquidated damages;

c.  Granting judgment in favor of the Plaintiffs and against Defendants U.S.A. Lawns Inc. and Reynaldo J. Rose, jointly and severally, on the Plaintiffs' claims under the Minimum Wage Provisions of the Florida Constitution and awarding them the amount of their unpaid minimum wages, along with an equal amount as liquidated damages;

d.  Awarding the Plaintiffs the costs of this action;

e.  Awarding the Plaintiffs treble damages as authorized by RICO, 18 U.S.C. § 1964(c);

e.  Awarding the Plaintiffs a reasonable attorney's fee; and

f.  Granting such further relief as this Court deems just and equitable.

Respectfully submitted,

Vanessa Coe
Florida Bar Number 096788
Florida Legal Services, Inc.
508 Lucerne Avenue
Lake Worth, Florida  33460-3819
Telephone:    (561) 582-3921
Facsimile:    (561) 582-4884
e-mail: vanessa@floridalegal.org

*Attorney for Plaintiffs*

Victoria Mesa
Florida Bar Number 076569
Florida Legal Services, Inc.
508 Lucerne Avenue
Lake Worth, Florida  33460-3819
Telephone:    (561) 582-3921
Facsimile:    (561) 582-4884
e-mail: victoria@floridalegal.org

*Attorney for Plaintiffs*